**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RAWLINGS SPORTING GOODS | ) | |
| COMPANY, INC., | ) | |
| | ) | |
|       Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:12-cv-01204-CDP |
| | ) | |
| WILSON SPORTING GOODS CO., | ) | |
| | ) | |
|       Defendant. | ) | |

## DEFENDANT'S MOTION TO DISMISS, WITH SUPPORTING MEMORANDUM

Defendant Wilson Sporting Goods Co. ("Wilson"), by and through counsel, moves the Court for an order of dismissal pursuant Fed. R. Civ. P. 12(b)(6) of Plaintiff Rawlings Sporting Goods Company, Inc.'s ("Rawlings") First Amended Complaint ("Complaint").

In support of this motion, Wilson presents the following memorandum, which is incorporated by reference.

## MEMORANDUM IN SUPPORT

### I.      INTRODUCTION

Rawlings asserts that Defendants Wilson and Brandon Phillips, a professional baseball player, violated Rawlings' various trademark and trade dress rights when Wilson provided Mr. Phillips two baseball gloves with "metallic gold" colored features. Dkt. #23, ¶31. Each of Rawlings' Claims for Relief is centered solely around Wilson's alleged use of the color "metallic gold" on a baseball glove. Rawlings claims ownership over the use of the color "metallic gold" on baseball gloves, referring to its trademark and trade dress rights collectively as the "GOLD GLOVE MARKS." Rawlings' Complaint does not allege that Defendants have ever utilized the words "Gold Glove" in any manner. The Complaint is fatally defective because Rawlings has not

met the minimum pleading requirements for asserting exclusive rights to the use of the color "metallic gold" on a baseball glove.

At the outset, the Court should note that Rawlings has no registered trademark in the color "metallic gold." Dkt. #23-2. Rawlings' registered trademarks are "word marks," meaning they pertain to the use of the **words** of the trademark and do not meet the requirements for claiming ownership of a **color** used on a product.  Dkt. #23-2. Furthermore, Rawlings' alleged trade dress is associated with a trophy.  Rawlings has not pled facts to demonstrate how its trophy creates an exclusive right to the use of a gold color on actual baseball gloves used on an actual playing field.

Nor has Rawlings pled facts showing that it owns rights to the exclusive use of the color "metallic gold" on a baseball glove.  Rawlings can only obtain exclusive rights in its use of the color "metallic gold" if it alleges and can show that its use of that color on its product has acquired "secondary meaning."[1]  A trademark or trade dress in a color has acquired secondary meaning when, "in the minds of the public, the primary significance of a [color] is to identify the source of the product rather than the product itself."[2]  Rawlings must plead with specificity that consumers identify Rawlings as the source of any "metallic gold" colored baseball gloves, and that the color "metallic gold" by itself has come to signify a Rawlings glove to the public. *See id.* Rawlings' Complaint does not meet this standard.

Wilson is not suggesting that a company cannot obtain rights in a color.  Rather, Wilson asserts that Rawlings has failed to plead any facts that demonstrate that Rawlings has used the color "metallic gold" on its baseball gloves, and that its use of the color has been so consistent and pervasive as to have acquired "secondary meaning" in the minds of the public.

---

[1]*Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 212 (2000).
[2]*Id.* at 211.

Rawlings' Complaint is void of any pleading as to secondary meaning with respect to the use of any color on a baseball glove, whether white gold, yellow gold, rose gold, "metallic gold," or any other shade of gold.  Rawlings points to no facts that demonstrate that, when consumers see any shade of gold on a glove, they think of Rawlings.  If "metallic gold" is the shade in which Rawlings now asserts an exclusive ownership right for use on a baseball glove, the Complaint fails to plead how that right has arisen. The Court should dismiss Rawlings' Complaint under Rule 12(b)(6) because Wilson cannot violate a right that has not been pled and, we would suggest, does not exist.

## II.    BACKGROUND

Rawlings has no registration on the color "metallic gold", nor has it ever sought such registration. Rawlings' Complaint asserts that Defendants Wilson and Mr. Phillips have infringed upon Rawlings' rights in the registered word trademarks "RAWLINGS GOLD GLOVE AWARD," "GOLD GLOVE AWARD," and "GOLD GLOVE;" a pending trademark application for the words "THE GOLD GLOVE CO.;" and common law trade dress "embodied in the distinctive famous metallic gold-colored baseball glove that forms the centerpiece of the world famous RAWLINGS GOLD GLOVE AWARD." Dkt. #23, ¶22.  Rawlings does not assert that Wilson ever used the registered word marks.

Instead, Rawlings combines its registered word marks with its asserted common law rights in the design of a trophy and then refers to its collective rights as the "GOLD GLOVE MARKS." *Id.*  Rawlings does not plead with specificity which alleged rights are infringed, and this is Rawlings' critical failing.  If Rawlings alleges that Wilson infringes one of the word marks, it should plead it with specificity, for there is no allegation that Wilson ever used the words "gold glove" on the gloves allegedly provided by Wilson to Mr. Phillips.  If Rawlings believes that Wilson has infringed only the alleged trade dress rights, Rawlings should plead this.  Instead,

Rawlings pleads without specificity that Wilson infringed the entire group of "GOLD GLOVE MARKS" by allegedly providing Mr. Phillips with two baseball gloves having metallic gold colored webbing and stitching. Dkt. #23, ¶31.  Rawlings does not even attempt to plead how word marks owned by Rawlings can be infringed by a glove bearing no such words.

### A.      Rawlings' Registered Word Trademarks

Rawlings claims that its "GOLD GLOVE MARKS" include two word trademarks, "RAWLINGS GOLD GLOVE AWARD" and "GOLD GLOVE AWARD." Each word trademark is a registered service mark associated with Rawlings' Gold Glove Award. Dkt. #23-2. The registration of these trademarks is not associated with any product, and each mark is registered in the entertainment services trademark class. *Id.*   The registrations do not assert rights in the color "metallic gold." *Id.*   Rawlings does not plead any facts that demonstrate that either of these two word marks has acquired secondary meaning in the use of the color "metallic gold" on its gloves for use in the game of baseball.

Rawlings' next word trademark, "GOLD GLOVE", is associated with a baseball glove, but the mark does not cover any design or color attributes of a baseball glove. Dkt. #23-2.  In other words, the mark only covers the use of the **words** "Gold Glove" on a glove.  In fact, Rawlings does not even use the color "metallic gold" on its "Gold Glove"-labeled baseball gloves being sold today, thereby further disassociating the color "metallic gold" from the trademark. *See* http://www.rawlings.com/Series/Gloves/gold-glove.   Again, Rawlings does not plead that this word mark has acquired secondary meaning in the use of the color "metallic gold."  Similarly, Rawlings does not allege that Wilson or Mr. Philips have used the words "Gold Glove" on a baseball glove.

Rawlings' next alleged word mark is a pending trademark application for the words "THE GOLD GLOVE CO." Dkt. #23, ¶22. According to the United States Patent and Trademark

Office website, Rawlings filed this application as an "intent to use" trademark and, accordingly, the application does not indicate when the mark was first used in commerce. Rawlings has not pled trademark rights in this pending application or a date when this word mark was first used in commerce, nor has Rawlings pled that this mark has acquired secondary meaning in the use of the color "metallic gold."

### B.     Rawlings' Alleged Common Law Right To The Color "metallic gold"

The only facts pled by Rawlings that relate to its use of the color "metallic gold" are in its description of the so-called GOLD GLOVE MARKS, as follows:

> "…and the common law trade dress embodied in the distinctive famous metallic gold colored baseball glove that forms the centerpiece of the world famous RAWLINGS GOLD GLOVE AWARD®."

Dkt. #23, at ¶ 22.  Exhibit A to the Complaint is a color picture of the Rawlings Gold Glove Award trophy.   Dkt. #23, ¶ 14; Dkt. #23-1. Rawlings does not allege that it has sold or distributed a single glove with "metallic gold" that has been used in the game of baseball, nor is one pictured in any of the exhibits to the Complaint.  The Complaint is therefore void of *any* use by Rawlings of the color "metallic gold" on baseball gloves used in play, let alone a consistent and pervasive usage creating a secondary meaning in the minds of the public that the use of a metallic gold color on the leather, stitching, or webbing on gloves means that the source is Rawlings.

Rawlings also alleges a nebulous claim of common law trade dress rights in its Gold Glove trophy. Dkt. #23, ¶22. Rawlings does not have a federal registration for this trade dress. Rawlings pleads in one sentence, without reference to any Exhibit, that its trade dress rights are: "embodied in the distinctive famous metallic gold-colored baseball glove that forms the centerpiece of the world famous RAWLINGS GOLD GLOVE AWARD." *Id.*  Rawlings pleads no other facts regarding its alleged trade dress right. Rawlings does not plead whether any

Rawlings product uses its alleged trade dress.  Rawlings does not plead whether any Rawlings baseball glove sold to consumers uses the color "metallic gold."   All of the counts of the Complaint are defective, as they all spring from the inadequate pleading in Paragraph 31 thereof.

### C.      Rawlings' Complaint Does Not Allege Facts Sufficient To Plead A Common Law Claim

Rawlings has not put Wilson on notice as to which of its trademark or trade dress rights include exclusive rights in the use of the color "metallic gold" or any other shade of gold on a baseball glove. Instead, Rawlings has inappropriately grouped word registrations, a word application and common law rights into the so-called "GOLD GLOVE MARKS" in an attempt to obfuscate the rights it may or may not have.

Rawlings has not pled that it uses the color "metallic gold" on its own baseball gloves sold to consumers. Additionally, Rawlings has not pled facts sufficient to demonstrate that Rawlings' baseball gloves with "metallic gold" coloring have acquired secondary meaning with the color "metallic gold" such that consumers identify the color "metallic gold" with Rawlings' baseball gloves.  Importantly, consumers must associate Rawlings products with the color gold metallic **separate and apart** from the word "gold" or any other Rawlings' trademark.  *See Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 1115 (2d Cir. 2006); Trademark Manual of Examining Procedures, §1202.05(c) (Color as a Separable Element).  Since Rawlings has not properly pled any rights in the exclusive use of the color "metallic gold" on a baseball glove, and since each of Rawlings' Claims for Relief is grounded in Wilson's alleged use of the color "metallic gold" on a glove, Rawlings' Complaint does not meet the pleading requirements of Fed. R. Civ. P. 8(a) and should be dismissed.

### III.   LEGAL ARGUMENT

#### A.   Pleading Requirements For a Federal Court Complaint

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  Fed. R. Civ. P. 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. at 678. A pleading is insufficient when it only alleges "labels and conclusions," a "formulaic recitation" of the elements of a cause of action, or "naked assertions" without "further factual enhancement."  *Id.*, quoting *Twombly, supra, at 557.*

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Determining whether a claim is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, *supra*, at 664.  The plausibility standard requires "more than a sheer possibility" that the defendant is liable for the acts alleged. *Id.,* at 678.  Here, where Rawlings has pled no facts regarding its rights in the use of the color "metallic gold" on a baseball glove and no facts to demonstrate that the color "metallic gold" has acquired secondary meaning as required by the Supreme Court, the complaint should be dismissed.  *Id.*

#### B.   Rawlings Has Not Identified Which of The GOLD GLOVE MARKS Includes Exclusive Rights to The Use of The Color "Metallic Gold" on a Baseball Glove

Rawlings' Complaint does not put Wilson on notice as to which of the GOLD GLOVE MARKS is said to include Rawlings' exclusive rights in the use of the color "metallic gold" on a baseball glove. Again, Rawlings is accusing Wilson of violating its rights in the GOLD GLOVE MARKS because Wilson allegedly gave Mr. Phillips baseball gloves with "metallic gold"

colored features. Rawlings is not accusing Wilson of using the words "gold glove." None of Rawlings' word trademarks cover use of the color "metallic gold" on a baseball glove, and Rawlings has not pled facts in the Complaint to indicate whether any or all of the marks do in fact cover the use of the color "metallic gold."

Furthermore, Rawlings' alleged trade dress is associated only with a trophy, the Rawlings Gold Glove Award, and Rawlings has not pled any facts to demonstrate how this trade dress covers use of "metallic gold" color on part of an actual baseball glove for use in an actual baseball game. Wilson should not have to guess at the claims asserted against it.  Rawlings' Complaint is insufficient because it fails to state a claim for relief that is plausible on its face. *Iqbal,* 129 S.Ct. at 1949, quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. For this reason alone, the court should dismiss Rawlings' Complaint.

### C.   Rawlings' Complaint Has Not Pled Facts Sufficient to Demonstrate That Consumers Associate The Color "Metallic Gold" With Rawlings Baseball Gloves.

A color can act as a trademark or trade dress ***only*** when one's use of the color has acquired secondary meaning.  *Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 211, 212 (2000); *Sherwood 48 Assocs. v. Sony Corp. of Am.*, 76 Fed. Appx. 389, 391 (2d Cir. 2003) ("To plead a claim of trade dress infringement involving the appearance of a product, [a plaintiff] must allege that…the claimed trade dress has acquired secondary meaning…."). A trademark or trade dress in a color has acquired secondary meaning when, "in the minds of the public, the primary significance of a [color] is to identify the source of the product rather than the product itself."  *Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. at 211.  Thus, Rawlings must allege sufficient facts to establish that, in the mind of the consumer, Rawlings' use of "metallic gold" on a baseball glove is enough, by itself, to identify the glove's source as Rawlings. Rawlings has not pled any facts that: 1) it consistently uses the color "metallic gold" on its

baseball gloves; and 2) consumers associate the use of "metallic gold" on any part of an actual baseball glove with Rawlings as the source of the product.  Rawlings simply has not pled any facts to support its contention that it owns the rights to the use of a "metallic gold" color on a baseball glove.

Rawlings has not pled facts to show that, when consumers see "metallic gold" color on an actual baseball glove, they think of Rawlings' gloves.  Secondary meaning, or "acquired distinctiveness," requires that "the user of ... a [trade] dress ... show that by long and exclusive use in the sale of the user's goods, the [dress] has become so associated in the public mind with such goods that the [dress] serves to identify the source of the goods and to distinguish them from those of others." *Stuart Hall Co., Inc. v. Ampad Corp.*, 51 F.3d 780, 789 (8th Cir. 1995), *quoting Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 868 (8th Cir. 1994).  "[T]he ultimate inquiry is whether in the consumer's mind the mark denotes a 'single thing coming from a single source.'" *Co–Rect Products v. Marvy! Advertising Photography*, 780 F.2d 1324, 1330 (8th Cir. 1985) (internal quotations omitted).  Courts have looked to various factors to determine when a color has acquired secondary meaning: direct consumer testimony; consumer surveys; exclusivity, length, and manner of use; the amount and manner of advertising; the amount of sales and number of customers; established place in the market; and proof of intentional copying. *Heartland Bank v. Heartland Home Finance, Inc.*, 335 F.3d 810, 819 (8th Cir. 2003).

Here, Rawlings' Complaint fails address any of these factors.  Rawlings states only the conclusion that its trade dress is distinctive; however, Rawlings fails to plead a single fact to demonstrate that Rawlings use of the color "metallic gold" on a glove has acquired secondary meaning.  Defendant notes again that Rawlings does not even use a gold color for the leather, stitching or webbing of the gloves marketed as the Rawlings "Gold Glove" line of gloves. http://www.rawlings.com/Series/Gloves/gold-glove.  Rawlings' own advertising and marketing

9

shows no connection between the word mark and the coloring of the actual gloves bearing the word mark.

A similar case was dismissed where a plaintiff's complaint failed to plead facts to demonstrate secondary meaning. *Urban Group v. Dick's Sporting Goods, Inc.*, 2012 WL 3240442 (S.D.N.Y. Aug. 7, 2012).  In *Urban*, plaintiff claimed a trade dress in a trampoline with a red and black jumping mat.  *Id.*, at *4.  The complaint alleged that all its trampolines were sold with a red and black jumping mat that included the plaintiff's trademark. The complaint also stated the number of units sold, that the units were featured on several television shows, and that the alleged trade dress had become associated with the plaintiff in the eyes of the public.  Despite these facts, the court found that the complaint was insufficient because it failed to contain facts related to advertising expenditures, consumer surveys, marketing coverage, or any prior attempts to plagiarize the design.  *Id.*, at *7.  Citing the Supreme Court standard from *Iqbal* and *Twombly*, the district court dismissed the complaint for failure to properly plead secondary meaning in the plaintiff's use of the red and black colored pattern on a jumping mat.  *Id.*  In the present case, Rawlings has similarly failed to allege any of these supporting facts.

In addition to the secondary meaning requirement, Rawlings must show that its use of the color "metallic gold" is a separate element from its use of its other alleged trademarks.  *See* Trademark Manual Examining Procedures, §1202.05(c) (Color as a Separable Element). Rawlings cannot contend ownership of the use of the color "metallic gold" unless it pleads that the color creates a separate commercial impression from the word "gold" used in Rawlings' word trademarks.  *See Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d at 1115; Trademark Manual of Examining Procedures, §1202.05(c) (Color as a Separable Element). Rawlings must plead that the public would identify the source of the glove by the color "metallic gold" alone, separate and apart from any other Rawlings trademark. Since Rawlings never

properly pleads its own use of the color "metallic gold" on a baseball glove, the only commercial impression related to the color "metallic gold" must come from the use of the word gold and not use of the color itself.  Once again, Rawlings' Complaint fails to plead an exclusive right to the use of "metallic gold" on an actual baseball glove, and, likewise, fails to demonstrate how Wilson's alleged use of "metallic gold" on a glove would violate any Rawlings right.

Finally, the Court should note that Rawlings knows how to show secondary meaning in the use of a color.  Rawlings owns trademark Registration No. 4,177,772 covering a Red Patch.  To acquire this mark, the United States Trademark Office required Rawlings to submit evidence that consumers associate the color red with Rawlings' products.  Rawlings had to submit the following evidence to show secondary meaning:  catalogs from 2003-2011 showing the Red Patch on an actual baseball glove in a red color; sales data of products using the Red Patch on actual baseball gloves in a red color from 2005-2009; baseball cards from 1960-2000 showing players with Rawlings' baseball gloves with a Red Patch in a red color; a declaration from a Rawlings' executive detailing the distinctiveness of the Red Patch in a red color on an actual baseball glove; printouts from rawlingsgear.com and vendor sites promoting the Red Patch and showing it on the actual baseball glove; two advertisements with glove and Red Patch displayed, a press release – "America's Greatest Brands" showing "Iconic Red Patch"; printouts from Vintage Baseball Glove Forum highlighting discussions of fans mentioning the Red Patch in a red color on an actual baseball glove; statements from 87 people who acknowledged they uniquely associate the Red Patch in a red color on an actual baseball glove with Rawlings; 116 statements from people recognizing that a very similar version of a red patch in a red color on an actual baseball glove is associated with Rawlings; and a statement that **"Virtually all of Applicant's gloves bear the Red Patch Logo and Rawlings' glove sales make up**

**approximately 35% of the baseball glove market."** (Emphasis added).  *See* Application for Registration No. 4,177,772.

Rawlings has pled no similar facts here. Rawlings' attempt to "own" the use of the color "metallic gold" on baseball gloves falls woefully short of the steps it knows it needs to take from past experience in the United States Trademark Office.

## IV.    CONCLUSION

Rawlings has not pled a single fact to support the allegation that it exclusively owns the use of the color "metallic gold" on a baseball glove. Thus, Rawlings cannot claim Wilson violated any right through its alleged use of the color "metallic gold."  Rawlings' general averments relate solely to its word marks and its award.  Rawlings must plead more than just to state that Wilson harmed it by using the color gold on a glove.  *Iqbal, supra*, at 1949. Before Rawlings can claim Wilson violated its rights by allegedly distributing a glove with "metallic gold" features, Rawlings must first plead facts that demonstrate its rights in the color "metallic gold" on gloves, and state which rights were infringed by what acts by Wilson.  It must plead facts to support its contention that its use of the color "metallic gold" on its products has acquired secondary meaning, and that consumers identify the color "metallic gold" with Rawlings' gloves. Rawlings' Complaint does not meet this standard, and fails to even demonstrate its own use of "metallic gold" on its gloves.

For these reasons, Rawlings' allegations are insufficient under the pleading standard set forth by the Supreme Court, and this Court should dismiss the Complaint.

Respectfully submitted,

By: /s/ Jeffery A. Key
Jeffery A. Key (*Pro Hac Vice*)
jakey@key-and-associates.com
Key & Associates Law Offices
321 North Clark Street, Suite 500
Chicago, IL 60654
Tel. (312) 560-2148
Fax (312) 957-1236

and

J. Bennett Clark, #30907-MO
ben.clark@bryancave.com
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri 63102-2750
Tel. (314) 259-2000
Fax (314) 259-2020

**Attorneys for Defendant**
**Wilson Sporting Goods Co.**


## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon counsel of record on this 28th day of December, 2012.

/s/ Jeffery A. Key